JAMES W. DOWNEY, EXECUTOR OF SAMUEL S. DOWNEY, DECEASED, PLAINTIFF IN ERROR, *v.* MARY M. HICKS, EXECUTRIX OF JOSEPH T. HICKS, DECEASED.

Where the declaration, in an action of assumpsit, contained the following counts:—
1. On a promissory note; 2. *Indebitatus assumpsit* for the hire of slaves; 3. An account stated; 4. *Quantum valebat* for the services of slaves; 5. Work and labor, goods sold and delivered, and money lent and advanced; 6. Money had and received; 7. An account stated; 8. A special agreement for the hire of slaves· And the defendant pleaded,—1. The general issue; 2. Statute of limitations; 3. Payment;—and the jury found a verdict for "the defendant upon the issue joined as to the within note of four hundred and fifty-six dollars, and the within account"—this verdict, although informal, was sufficient to authorize to enter a general judgment for the defendant.

An objection cannot be made in this court to a release under which a witness was sworn, unless the objection was made in the court below, and an exception taken.

Where a certificate of deposit in a bank, payable at a future day, was handed over by a debtor to his creditor, it was no payment, unless there was an express agreement on the part of the creditor, to receive it as such; and the question, whether there was or was not such an agreement, was one of fact to be decided by the jury.

The bank being insolvent when the certificate of deposit became due. there was no ground for imputing negligence in the collection of the debt by the holder, as no loss occurred to the original debtor.

If the evidence showed that, after the maturity of the certificate, the original debtor admitted his liability to make it good, the jury should have been instructed that this evidence conduced to prove that the certificate was not taken in payment.

*Mr. Chief Justice Taney* did not sit in this cause.

THIS case was brought up, by writ of error from the Circuit Court of the United States for the Southern District of Mississippi.

There were three bills of exceptions taken upon the trial in the Circuit Court, which extended over more than one hundred pages of the printed record. The last one included the whole of the evidence. The substance of the case is given in the opinion of the court, to which the reporter refers the reader.

It was argued by *Mr. Badger*, with whom was *Mr. William A. Graham*, for the plaintiff in error, and *Mr. Volney E. Howard*, with whom was *Mr. Walker*, for the defendant in error.

The argument of the counsel for the plaintiff in error, was so

intermingled with their statement of the facts in the case, that it will be necessary to insert the whole.

The declaration of the plaintiff in error, who was the plaintiff in the court below, is an assumpsit, and contains eight counts.

The first is on the promissory note of testator, in the name of Hicks & Arnold, for $456; the second is *indebitatus* assumpsit for hire of forty slaves; the fourth a *quantum valebat* for the services of forty other slaves; the third and seventh, each upon an account stated; the fifth for work and labor, goods sold and delivered, and money lent and advanced, and the seventh for money had and received; the eighth and last count is upon a special agreement of testator to hire from the plaintiff certain slaves mentioned in the count, and to pay the same rates of hire as the testator had agreed to pay Williams & Mills for the same slaves, &c.

The defendant pleaded 1st, the general issue; 2d, the statute of limitations; 3d, payment, upon which plea issues were joined, and the cause tried. The jury found a verdict in these words: "That they find for the defendant upon the issues joined, as to the within note of four hundred and fifty-six dollars, and the within account," and upon this finding, the court gave a general judgment for the defendant.

It is insisted, on the part of the plaintiff in error, that the verdict is imperfect, irresponsive to the issues, and does not dispose of the whole matter submitted by the pleadings; that upon the most favorable interpretation which can be given of it, it passes only on the first count on the note, and the third and seventh upon accounts stated, and leaves the matters arising upon the five other counts entirely undisposed of. That this verdict being thus imperfect, partial, and irresponsive to the issue, and consequently illegal, does not support the judgment, which is therefore erroneous.

The first bill of exceptions states, that the plaintiff objected to the reading of the deposition of Andrew Arnold, taken for the defendant, on the ground of his incompetency, but the objection was overruled, and the deposition read to the jury. Arnold was at one time plainly interested and incompetent.

In order to meet the objection, the defendant, by his 16th interrogatory, asks the witness, "Are you interested in this case? if you have any release from the executrix of Joseph T. Hicks, please mark it, and inclose it." To which the witness answers, "I am not interested in this case; I have a release from Mary M. Hicks, the surviving executrix of Joseph T. Hicks, deceased, which is marked with the letter A, and is hereto attached." By reference to the paper set out in the second, it appears to have been attested as a witness by one John Curan.

It is insisted, for the plaintiff in error, that the deposition ought not to have been read, because there was no legal evidence of the execution of the release.

1. The subscribing witness ought to have been produced, or his absence accounted for, and his handwriting proved, or other proper matter shown, to let in secondary evidence of the execution of the deed. This rule is of general application to all instruments attested, or appearing to have been attested, by a witness, whether produced to support the action, or used collaterally in evidence, and that no acknowledgment of the party, however solemn, though made on oath, will supply the want of evidence as to the subscribing witness. 2 Phillips, Ev. ch. 6, p. 201 to 203; Call *v.* Dunning, 4 East, 53.

The rule is very well and forcibly stated by Mr. Starkie. 1 Stark. on Ev. Part 2, sec. 139, p. 330.

In order to render a witness competent by a release, it must be produced and proved as in other cases. 2 Stark. Ev. Part 4, p. 759; Corking *v.* Jarrard, 1 Camp. 37; and it is then evidence in the cause for all purposes. Starkie, *ut supra;* Gibbons *v.* Wilcox, 2 Stark. Cas. 39.

2. There is no evidence of the execution of the release at all. The witness says, " I have a release," which I annex. He does not swear to the execution, or the handwriting, or the acknowledgment of it. Suppose it a forgery, how could he be indicted for perjury?

Another bill of exceptions, is to the admission by the Judge, of A. W. Brien as a witness for the defendant. Brien, in his *voir dire*, stated that he was the husband of a daughter of Sarah Curan, to whom, by the will of defendant's testator, a legacy was given; that he and his wife had received $1500 in full of his share of the estate, and had released to the defendant.

It is insisted that the witness was liable to refund to the defendant, and without her release was not competent. Moffit *v.* Lane, 2 Ired. 254.

The same bill states that the defendant produced an account-book, kept by the testator, and the said witness having deposed that a certain portion of the book was in the handwriting of John R. Hicks, that portion of the account was allowed by the Judge to be read to the jury, notwithstanding objection taken thereto by plaintiff's counsel.

It is insisted, on the part of the plaintiff, that this account was not competent evidence, because the said John R. Hicks was not a general agent of plaintiff, nor his agent to state the account, nor in any other manner so connected with the plaintiff as to make his statement evidence against plaintiff.

By the third bill of exceptions, it appears that the defendant's

testator was, in 1836, the agent of plaintiff to receive the hires of certain slaves, owned by him in Mississippi; that he collected large sums on account thereof; that he afterwards took the slaves into his own employment, as hirer, to execute a contract on the Mississippi Railroad; that subsequently, in 1838, having formed a partnership with one Arnold, he continued the slaves in the employment of this firm of "Hicks & Arnold."

The said testator, and Hicks & Arnold, being thus indebted to the plaintiff in a large amount, Dr. John R. Hicks, a neighbor of plaintiff's in North Carolina, and a brother of the testator, visited Mississippi, in June, 1839, to collect hires due for his own negroes, and took with him a letter from plaintiff, desiring the testator to send him whatever was due him, to the amount of $12,000, if possible. An account was then stated, showing a balance due plaintiff, 1st January, 1839, of nearly $10,000. The testator thereupon drew a check upon the Mississippi Railroad Bank, for the amount, which the witness Arnold deposes was received by John R. Hicks, as plaintiff's agent, in payment; but Hicks himself deposes that he had no authority to bind the plaintiff, merely acting as his friend. The said testator and John R. Hicks then went to Natchez, to make further arrangements respecting the business, where the check was converted into a certificate of deposit for the same amount, dated 10th January, 1849, and payable with eight per cent. interest, on the 1st of November following. This certificate is copied in the record.

It was proved, by the deposition of Eli Montgomery, president of the bank, that this certificate was not issued upon any deposit, but in settlement of a debt due to Hicks & Arnold, and made payable on the 1st of November, by which day it was supposed the bank would have funds to meet it; that, in March, 1840, it was admitted by the testator, Andrew Arnold, and the plaintiff, that "Hicks & Arnold" owed plaintiff a large debt, for the hire of negroes, and had sent this certificate to him on account of their debt, and that plaintiff had refused to accept it in payment or satisfaction of any part of the debt; that Hicks & Arnold were bound to plaintiff to pay the debt (if the bank did not pay the certificate) in the same manner and to the same extent as if the certificate had not been sent. It was proved that the credit of the bank had greatly sunk at the maturity of the certificate, became continually worse, and by April, 1840, it had stopped payment; that a suit was brought, by concert between Hicks & Arnold and plaintiff, against the bank, Hicks & Arnold admitting their own liability, and no satisfaction was ever obtained from the bank.

The plaintiff's counsel prayed the Judge to instruct the jury: —(See the substance of the prayer in the opinion of the court.)

.These instructions the Judge refused to give, as prayed, and, by the instructions actually given, he manifestly erred, by substantially repudiating proper instructions, and by leaving to the jury to decide questions of law which he ought to have decided himself.

The acceptance of the certificate by plaintiff, was not in law an extinguishment of the debt, unless there was an express agreement so to accept it ; and the burden of proof, that the certificate was given and received as a satisfaction or extinguishment of the preceding debt, was upon the defendant.

A bill, or note, given for a preceding debt, is not deemed payment, unless so expressly agreed, or it has been negotiated, and is outstanding against the defendant. Burden v. Halton, 4 Bing. 454 ; Rott v. Watson, Ibid. 273 ; Raymond v. Merchant, 3 Cam. 147 ; Owenson v. Morse, 7 T. R. 64 ; Hickly v. Hardy, 7 Taunt. 312 ; Mussen v. Price et al. 4 East, 147. See also Greenwood v. Curtis, 6 Mass. 358 ; Johnson v. Johnson, 11 Mass. 361 ; Murray v. Governeur, 2 Johns. Ca. 438 ; Johnson v. Weed, 9 Johns. 310.

Nor is the receipt of a note as cash, evidence that it was, taken as an absolute payment. Tobey v. Barber, 5 Johns 68.

It is but a suspension of the right of action, until the maturity of the note. } utnam v. Lewis, 8 Johns. 389.

In the absence of proof that a draft or check was received in absolute payment, it is regarded but as a means whereby the creditor may obtain payment — as payment provisionally, until dishonored; and if dishonored, it is no payment. The People v. Howell, 4 Johns. 296 ; Cromwell v. Lovett, 1 Hall, N. Y. Rep. 56 ; Olcott v. Rathbone, 5 Wend. 490 ; Everett v. Collins, 2 Camp. 515 ; Puckford v. Maxwell, 6 T. R. 52.

What is true of notes, checks, and bills, is true also of the certificate ; and yet the Judge refused the instructions prayed to this effect.

The Judge, after some general and immaterial statements of the duty of an agent, proceeds to leave to the jury to decide what was reasonable diligence on the part of the plaintiff in endeavoring to obtain payment of the certificate from the bank.

But what diligence is reasonable, is a question of law, (the facts of the case being ascertained,) to be decided by the Judge, and not by the jury. 1 Stark. Part 3, sec. 27, page 414 ; Battle v. Little, 1 Dev. Rep. 387.

Besides, the rule as to the kind of diligence necessary, on the part of the plaintiff, is erroneous.

The bank, at the maturity of the certificate, was failing; shortly after, stopped payment. Hicks & Arnold paid nothing for the certificate, but took it on account of a debt which the

bank could not pay. All the facts were fully known to them, but not to the plaintiff. Under these circumstances, nothing but such gross and long-continued negligence, on the part of the plaintiff, as would amount to a fraud, would discharge Hicks & Arnold, considered as guarantors. Goring *v.* Edmonds, 6 Bing. 94, 19 E. C. L. 14.

This case is to be tested, not by the rules applying to negotiable instruments. If no loss was sustained for want of notice or suit, want of notice or suit does not affect the plaintiff's right. See Shewell *v.* Knox, 1 Dev. 412, and cases there cited.

Again, the Judge informs the jury that the plaintiff was bound by the act of Hicks, his agent, "if ratified" by him; whereas, he should have informed the jury what acts or declarations of plaintiff would amount to a ratification, and left them to decide, as their proper function, whether those acts or declarations had been proved.

The Judge ought to have told the jury, as prayed by the plaintiff, that bringing suit on the certificate to the first court after it became due, &c., was reasonable diligence. But to leave a matter of law to the jury, is itself error. Panton *v.* Williams, in Error; 2 Adolph. & Ellis, N. S. 169; Beale *v.* Roberson, 8 Ired. 276.

The Judge ought to have instructed the jury that the acknowledgment of Hicks & Arnold, after the certificate fell due, if made by them, was evidence that it was not taken as absolute payment, &c., as prayed by the plaintiff.

The counsel for the defendant in error made the following points.

1. Joseph T. Hicks was the agent of Downey, and even if he took the certificate of deposit in good faith, exercising the care which a prudent man should do in the management of his own affairs, he could not be held liable for the subsequent failure of the bank. He had reason to believe the bank was solvent; and as the certificate bore interest, it was considered better than specie as a remittance.

2. The proof on the record is sufficient to show, that John R. Hicks was the agent of Downey at the time of the settlement in 1839, but the subsequent reception of the certificate from Dr. John Hicks, by Downey, was an ample satisfaction of all he had done, even if he had no power to make the settlement in the first instance, and equivalent to an original authority. Story on Agency, § 539; Dunlap's Pailey, 171, note O.; Lawrence *v.* Taylor, 5 Hill, 107, 113.

3. It was the duty of Downey to have dissented from the ar-

21 *

rangement, and refused the certificate of deposit at the time it was tendered to him; but at all events, it was gross negligence, and not a reasonable time, to wait three or four years without notifying J. T. Hickey that he could not receive it as a payment. Pailey's Arg. 172, note; 2 Kent, 127; Caines v. Bleeker, 12 J. R. 300.

4. John Hicks proves that Downey took the certificate as absolute payment; and being thus accepted, was a good discharge of the debt; especially as it was in the name of Downey. Story on Contracts, § 998; 2 Greenleaf, Ev. § 523; Whitbeck v. Van Ness, 11 J. R. 409; 15 Ib. 241.

Whether it was accepted in satisfaction, was a question for the jury. 15 S. & R. 162; 9 J. R. 310.

5. The rulings of the court, it is submitted, were correct. It will be seen that the questions are not leading, if he apply to them the test which the rules of evidence establishes as a criterion. Greenleaf's Ev. § 434.

It will be admitted that several of the instructions, asked for by plaintiff, did not apply to the proof in the record, especially the first. It is submitted that the instructions given covered every legal proposition asked for by the plaintiffs.

Mr. Justice McLEAN delivered the opinion of the court.

This case was brought before us by a writ of error to the Circuit Court for the Southern District of Mississippi.

An action of assumpsit was commenced by the plaintiff, on a note for four hundred and fifty-six dollars, and a large sum for the hire of slaves.

The declaration contained ten counts, to which the defendant pleaded *non assumpsit*, the statute of limitations, and payment, on all o. which issues were joined. The jury "found for the defendant upon the issues joined as to the within note of four hundred and fifty-six dollars, and the within account." This finding, it is contended, is imperfect, irresponsive to the issues, and does not dispose of the whole matter submitted by the pleadings.

A verdict is bad if it varies from the issue in a substantial matter, or if it finds only a part of that which is in issue; and, though the court may give form to a general finding, so as to make it harmonize with the issue, yet if it appears that the finding is different from the issue, or is confined to a part only of the matter in issue, no judgment can be rendered upon the verdict. Patterson v. United States, 2 Wheat. 221. The verdict rendered was informal, but there was sufficient to authorize the court to enter it in form. The matter in controversy was the note stated and the hire of the negroes, the amount claimed

Downey v. Hicks.

for which, was stated in an account; and on both these the jury found for the defendant, on the issues joined. We think this was sufficient.

Andrew Arnold, a copartner of the testator, was offered as a witness, and being objected to on the ground of interest, a release was given in evidence, which, on its face, appeared to be duly executed; on which the witness was sworn. Objection is made that the execution of the release was not proved. The answer to this is, that there was no exception taken to the paper on that ground.

From the facts, it appears that Joseph T. Hicks, now represented by his executrix, was indebted to the plaintiff on the 10th January, 1839, on a settlement, nine thousand seven hundred and ninety-nine dollars and eighty nine cents, for the hire of negroes, which John R. Hicks, the friend of Downey, received in a certificate of deposit from the Mississippi Railroad Bank, situated at Natchez, payable on the 1st of November ensuing, for which he executed a receipt. He was not authorized to act as the agent of Downey, but he acted as his friend in the business. Being assured by his brother, Joseph T. Hicks, and others, that the bank was good, (and as a reason for this opinion it was stated that wealthy men had an interest in the bank,) and as eight per cent. interest was paid for deposits, the certificate was preferred, believing it would be satisfactory to the plaintiff. At the time of this transaction the bank was indebted to Joseph T. Hicks and Arnold, for labor on the railroad, a sum exceeding twenty thousand dollars. The mode of payment was by drawing a check on the bank for several claims, and then crediting on the books of the bank, as a deposit, the sum due to each claimant.

In February ensuing, when John R. Hicks returned to North Carolina, where he and the plaintiff resided, he handed over to Downey the certificate of deposit, who received it, saying he would have preferred the gold and silver; but said nothing further in repudiation or confirmation of the act of Hicks. In a letter dated the 3d of March, 1839, from J. T. Hicks and Arnold, to the bank, they say, " We have ever entertained the kindest feeling towards your institution, and every disposition of indulgence to the utmost of our ability. The time has now arrived when ruin awaits us, from a total inability to use your post-notes to meet our engagements;" and they proposed to take some money and negroes for the money due them from the bank, or to take the whole in negroes, if the money could not be paid.

For a short time after the date of the certificate of deposit, the bank continued to pay small notes in specie, but evidence was given conducing to show it was unable to meet its engage-

ments, and that in a short time it failed. Suit was brought by Downey against the bank on the certificate of deposit, in the spring of 1840; and also for other sums, due him from Hicks & Arnold, by arrangements with them. But nothing could be recovered from the bank.

Evidence was offered with the view of showing that Downey considered the certificate of deposit as good, and that he said he could not complain of Hicks, in receiving the certificate, as he had received a similar one on his own account.

Evidence was also given to show that on the eleventh of March, 1840, Joseph T. Hicks and Arnold, admitted the certificate of deposit was given as collateral security, and that they considered themselves bound to pay the debt due the plaintiff, including the certificate of deposit, and other demands. Evidence was also given to explain this conversation as referring exclusively to other demands, not including the certificate of deposit.

The testimony being closed, the plaintiff prayed the court to instruct the jury, 1. That the acceptance by the plaintiff of the certificate of deposit for a precedent debt due him by Hicks or Hicks & Arnold, was no payment or extinguishment of such debt, unless there was an express agreement to accept it as such payment; and to take the risk of the solvency of the bank.

2. That the certificate of a bank due at a future day, like the note of any third person, if given for a preëxisting debt, is not payment and discharge thereof, unless specially agreed to be so taken; and if a receipt in full be given, it is still a question of fact for the jury to decide whether there was such an agreement or not; and that unless the certificate be afterwards paid by the bank, it is *primâ facie* no satisfaction of the preëxisting debt.

3. That if the jury believe, from the evidence, that Hicks & Arnold or Hicks, after the maturity of the certificate, admitted their liability to make it good, such admission is evidence that the certificate was not taken as payment absolutely, but as conditional payment only, and that they had notice of all the facts necessary to hold them responsible.

The court charged the jury that "an agent is bound to act in accordance with his authority, to make his acts binding on his principal. If the agent exceeds his authority, his principal is not bound by his act, so exceeding his authority, unless the principal afterwards ratify his acts. If a principal, after he is informed what his agent has done, ratify his acts, he is bound by the acts of his agents, although the agent may not have had any authority to do the act so ratified at the time it was done. An act done as an agent by one having no authority, it is obligatory on his principal; if, in a reasonable time after, he is fully

informed of what has been done, he does not object thereto, he is presumed to ratify the acts, and is bound thereby."

That, " if Downey received the certificate, conditioned that he would receive the money in discharge of the debt, if the bank should pay it, then Downey was bound to use reasonable diligence to collect the money due on the certificate. Reasonable diligence consists in such exertions as a prudent man would use in his own case in the collection of the certificate; and if Downey failed to use such diligence to collect the money, the defendants are not liable, and the jury should find for the defendant."

In ordinary transactions, a check on a specie-paying bank, payable on demand, is payment. And, if the holder of the check present it to the bank, and direct the amount to be placed to his credit as a deposit, and the bank should fail, the loss would be the depositor's. The deposit was at his option and for his benefit. But the transaction of Downey and Hicks was not of this character. Doctor Hicks, who acted for Downey, was not authorized to make the arrangement; he acted, in his own language, " without authority, as the friend of the plaintiff." There was no money, in fact, deposited in the bank. It was indebted to J. T. Hicks and Arnold, who were in partnership, in a large sum; and, to pay Downey, Hicks drew a check for the amount, which was charged to his account in bank, and a certificate of deposit for the same amount was given to Downey. This arrangement was strongly recommended by the debtor, Hicks, to his brother, the friend of Downey. Eight per cent. was allowed on the certificate of deposit, which was payable in ten months.

A note of the debtor himself, or of a third party, is never considered as a payment of a precedent debt, unless there be a special agreement to that effect. Had Downey received the certificate of deposit himself, it could not have been considered a payment unless it was so agreed. The transaction, in fact, was only a dealing with credits. No money was drawn from the bank, or deposited in it. By the certificate, the credit of the bank was given in addition to the credit of the original debtor. Such a transaction, without a special agreement to receive the certificate in payment, would make it a collateral security only. A receipt for the amount, executed at the time, would not affect the question. In this view, it was error in the court not to give the first and second instructions asked by the plaintiff, unless the charge given substantially embraced the points stated.

In the charge given it is nowhere stated that, to make the certificate of deposit a payment, there must be an agreement to that effect. The jury are informed that, where an agent exceeds

his authority, or acts without authority, the principal is not bound, unless he ratify such. acts. But the jury are not informed what amounts to a ratification. They are told, where acts are done, c° which the principal is informed if he does not in a reasonable time object thereto, he is presumed to ratify the acts, and is bound thereby.

This, in all probability, misled the jury. Doctor Hicks, in receiving the certificate of deposit, did not pretend that he was authorized to receive it — much less that he was authorized to receive it as payment. The receipt of the certificate, under such circumstances, by Downey, without any express agreement on the subject, could not operate as payment. In this respect, therefore, unless such an agreement was shown and connected with this part of the charge, it was erroneous.

The jury were instructed that, if the certificate was received on condition the deposit, if paid by the bank, should be applied as payment, Downey was bound to use reasonable diligence. But the jury were not informed what that kind of diligence was, except, "that it consisted in such exertions as a prudent man would use in his own case in the collection of the certificate." Where a note is received as collateral security, and this certificate of deposit is only the obligation of the bank, and does not, in principle, in this respect, differ from a note, the holder is not bound to active diligence. If the note have an indorser, and it matures in his hands, he may be bound to take such steps as shall charge the indorser as a bank is bound, where a note is sent to it for collection. But he is not bound to bring suit. He is only chargeable with a negligence, which shall operate to the injury of the owner of the paper.

As, in less than three months from the date of the certificate of deposit by the showing of the defendant, the post-notes of the bank answered him no valuable purpose in satisfying the demands against him, there is no ground to allege that the defentant suffered by any want of diligence in the plaintiff. The bank was insolvent, if not when the certificate was given, before it became due. The above instruction was erroneous.

We think the court erred, also, in refusing to give the third instruction, as prayed by the plaintiff. If the evidence showed, after the maturity of the certificate, that Hicks & Arnold, or Hicks, admitted their liability to make it good, the jury should have been told by the court, that if they believed such an admission was made, it conduced to prove that the certificate was not taken in payment.

For the above reasons, the judgment of the Circuit Court is reversed, and the cause is remanded for further proceedings.

Mr. Justice DANIEL and Mr. Justice GRIER dissented.

Downey *v.* Hicks.

Mr. Justice DANIEL, (Mr. Justice GRIER concurring.)

It is my opinion, that the judgment of the Circuit Court, in this case, should be affirmed, upon the questions raised in the argument, 1st, upon the sufficiency of the finding by the jury, as being responsive to all the issues, or otherwise ; — 2dly, as to the admissibility in evidence of the release to Arnold, in the absence of the subscribing witness to that release, there is an entire concurrence amongst the Judges. But with the views announced as those of the court with respect to the authority and the acts of Doctor Hicks, as the agent of Downey, and as to the consequences deducible from those acts, I am constrained to disagree.

And here I must remark, that, according to my apprehension of the evidence upon the record, as to the authority vested in Doctor Hicks, as agent, and his acts under that authority, and with respect to the conduct of Downey, as principal, in confirmation of those acts, — that evidence has not been accurately stated. It is said by the court, that Doctor Hicks did not act as the agent, but merely as the friend of Downey. There seems to be some difficulty, and even confusion, in this attempt to discriminate between these two characters. True it is, that the agent, however confided in, does not always prove the best friend of his principal ; but it is equally true, that the principal would rarely select, as his agent, one whom he regarded in any other light than that of a friend. But the record, according to my apprehension of the evidence, discloses the most ample and explicit authority to Doctor Hicks, to settle the claims of Downey upon the firm of Hicks & Arnold, and exhibits instructions equally clear to Doctor Hicks, to transmit to Downey the amount which this agent, upon the settlement made by him, should ascertain to be owing from Hicks & Arnold to Downey. The record discloses these further facts : 1. The settlement made by Doctor Hicks with Hicks & Arnold ; 2. The drawing of a check by these persons in favor of Doctor Hicks, the agent, upon the bank at Natchez, for the amount ascertained to be due to Downey ; 3. The presentation of that check by the agent, at the bank at Natchez ; 4. The proffer by the bank, of payment in specie of the amount of the check ; and the express agreement of the agent with the bank, to commute that check and proffer of immediate payment in money for a certificate of deposit, or post-note, payable at a deferred period, bearing an interest of 8 per centum. So much, then, for the acts of the agent in virtue of the authority originally vested in him ; and if there could arise a doubt as to their validity, that doubt could apply only to the transmutation of the demand for the money into a certificate of deposit, or deferred payment, bearing interest. But, supposing

there had been room for doubt in this respect, on the ground that the agent had transcended his power, that doubt must be entirely dispelled when the conduct of the principal is considered. Upon being informed, by the agent, of the measure he had taken, and upon having the certificate transmitted to him, the principal said, in reply, that although he would have preferred a payment down in money, yet as the agent had acted for himself as he had done for his principal, he could not find fault with the arrangement. He expressed no apprehensions as to the prudence or safety of the arrangement, but ratified it expressly; and in fact the proof is clear, that at the time, and for some months after, the bank was paying specie; and that its certificates, like the one in question, commanded a premium in the market. In this mode was the entire proceedings of the agent explicitly ratified.

If this apprehension of the testimony be correct, then it is difficult to conceive how the jury could have been misled by the instructions which were given them by the court. Indeed this court, so far as those instructions covered the relation of principal and agent, have not questioned the correctness of those instructions. But it is said, that the court erred in the opinion it expressed upon the subject of the diligence requisite in the application for payment of the certificate of deposit. Let it be conceded that this opinion of the court upon the subject of reasonable diligence was not the law; still it should not affect the decision in this case, because that opinion had no connection with the true character of the case, which depended upon a phase of the evidence to which that instruction had no application, and could not influence. If the agent of Downey was authorized to settle, and had settled with the debtors of Downey, and the latter had accepted from his debtors what he acknowledged was payment, at this point the transaction closed; and unless the parties making payment could be affected by showing fraud or bad faith, the whole matter was terminated by the agreement between the parties. Downey had an indisputable right to receive payment in any medium he might choose, and it is not in the power of a court to control his first choice and give him the right to a second, or to visit, upon those who have applied their means to his satisfaction, and by so doing prevented them being available to themselves to any other possible purpose, the mischiefs resulting from his choice.

But it is said by the court, that Hicks & Arnold, subsequently to the failure of the bank, admitted their liability to Downey for this demand. Here, again, I conceive that the evidence in this cause has been greatly misapprehended, and that a correct understanding of the testimony will show that the

admission which has been brought to bear upon this transaction, related to a posterior and wholly different liability of the same parties — to a transaction in which Hicks and Arnold had deposited a certificate of deposit of this bank as collateral security for a debt from Arnold, and that security turning out not to be available, they held themselves bound to satisfy the demand it was designed to secure. This subsequent transaction had no connection whatever with that in which the check in question was given, and on which payment in money was proffered, but for which the certificate of deposit was, by express agreement of the agent, ratified by his principal, taken in full satisfaction.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias-de novo.*