## A. LESCHEN & SONS ROPE CO. v. MAYFLOWER GOLD MINING & REDUCTION CO.

(Circuit Court of Appeals, Eighth Circuit. November 1, 1909.)

No. 3,026.

1. **PAYMENT (§ 17\*)—BY NOTE—ACCEPTANCE OF DEBTOR'S NOTE IS NOT PAYMENT OF HIS DEBT.**

   The acceptance by a creditor of a promissory note of his debtor for his antecedent debt does not extinguish it, unless the note is paid. It is a conditional, and not an absolute, payment.

   [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 70–77; Dec. Dig. § 17.\*]

2. **PAYMENT (§ 17\*) — BY NOTE — AGREEMENT OR INDUBITABLE INTENTION OF CREDITOR TO TAKE RISK OF THE NOTE'S PAYMENT REQUISITE TO EXTINGUISH DEBT.**

   A clear agreement by the creditor that he will take the risk of the payment of the note, and that the debt is discharged thereby, or an indubitable intention so to do, is requisite to extinguish a debt by the taking of the debtor's note.

   [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 70–77; Dec. Dig. § 17.\*]

3. **PAYMENT (§ 17\*)—AGREEMENT THAT DEBT IS TO BE PAID OR HAS BEEN PAID BY NOTE MEANS CONDITIONALLY, AND NOT ABSOLUTELY, PAID.**

   An agreement that a debt shall be paid, or that it has been paid, by the note of the debtor, is a contract for an extension of time, and that the debt shall be paid, or has been paid, by the note on condition that the note is paid.

   [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 70–77; Dec. Dig. § 17.\*]

4. **PAYMENT (§ 67\*)—BY NOTE—ACCEPTANCE OF SECURITY STRENGTHENS PRESUMPTION THAT PAYMENT IS CONDITIONAL.**

   A lien, a title, or other security held for the payment of a debt strengthens the presumption that an agreement that a debt is to be paid, or has been paid, by the note of a debtor, is subject to the condition that the note is subsequently paid.

   [Ed. Note.—For other cases, see Payment, Dec. Dig. § 67.\*]

5. **CONTRACTS (§ 147\*)—CONSTRUCTION—COURTS TO ASCERTAIN INTENTIONS OF PARTIES FROM THEIR SITUATION WHEN MAKING AGREEMENT.**

   The court, so far as possible, should put itself in the place of the parties to the contract when their minds met upon the terms of the agreement, and then from a consideration of the writing itself, of its purpose, and of the circumstances which conditioned its making, endeavor to ascertain what they intended to agree to do, upon what sense and meaning of the terms they used their minds actually met.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.\*]

6. **CONTRACTS (§ 154\*) — CONSTRUCTION — COMMON RATIONAL MEANING PREFERRED TO UNUSUAL OR SUBTLE ONE.**

   Where the language of the agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreement must be preferred to that which makes it an unusual, unfair, or improbable contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 735; Dec. Dig. § 154.*]

7. CONTRACTS (§ 147*) — INTENTION DEDUCED FROM WRITING PREVAILS OVER INAPT EXPRESSIONS.

The intention of the parties, when manifest, or when ascertained from the written agreement, must control and be enforced, without regard to inapt expressions or the dry words of the contract, unless that intention is directly contrary to the plain sense of the binding words of the agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Action by the Mayflower Gold Mining & Reduction Company against the A. Leschen & Sons Rope Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Charles C. Butler, for plaintiff in error.

H. M. Hogg and C. L. Watson, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. This writ of error was sued out to reverse a judgment in favor of the defendant in error, the Mayflower Gold Mining & Reduction Company, a corporation, upon the pleadings which disclosed these facts: The mining company agreed to buy certain materials for a tramway from the plaintiff in error, A. Leschen & Sons Rope Company, a corporation, and to pay it therefor $1,000 on the execution of the contract, $2,500 upon a sight draft with bill of lading attached upon the delivery of a specific part of the goods f. o. b. the cars at St. Louis, in the state of Missouri, $2,500 30 days from the date of that bill of lading, $6,600 on a sight draft with bill of lading attached upon the delivery f. o. b. the cars at St. Louis of another specified part of the materials, and $4,200 "to be paid by your [the mining company's] note at sixty (60) days, * * * not later than sixty (60) days from arrival of last shipment," and the rope company agreed to sell these materials upon condition that the title and ownership thereof should remain in it, and that it might take possession thereof "in default of the last payment being made." The rope company delivered all the materials, the mining company made all the payments, except the last, and gave its note for that, but never paid the note. After the note was dishonored, the rope company replevied the materials, and the court below dismissed its action, on the ground that the mining company had made the last payment in accordance with the terms of the agreement by giving the note, which it had refused to pay.

The argument in support of this conclusion is that by the terms of the contract the parties expressly agreed that the $4,200 was "to

be paid by your [the mining company's] note at sixty (60) days," that the note was given, and that thereby the $4,200 was paid in the way the parties agreed that it should be paid, so that there was never any default in the last payment, and the title to the property vested in the purchaser. But was this the meaning of the contract? Does this agreement evidence the intention of the parties to it that the title to this property should pass to the vendee when the latter gave its 60-day note? The purpose of all interpretation is to ascertain and to give effect to the intentions of the parties expressed by their writings. The basic rule for the discovery of those intentions is that the court, so far as possible, should put itself in the place of the parties to the contract when their minds met upon the terms of the agreement, and then, from a consideration of the writing itself, of its purpose, and of the circumstances which conditioned its making, endeavor to ascertain what they intended to agree to, upon what sense and meaning of the terms they used their minds actually met. American Bonding Co. v. Pueblo Investment Co., 150 Fed. 17, 27, 80 C. C. A. 97, 107, 9 L. R. A. (N. S.) 557; Accumulator Co. v. Dubuque St. Ry. Co., 64 Fed. 70, 74, 12 C. C. A. 37, 41, 42; Salt Lake City v. Smith, 104 Fed. 457, 462, 43 C. C. A. 637, 643; Fitzgerald v. First National Bank, 114 Fed. 474, 482, 52 C. C. A. 276, 284.

Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract. Pressed Steel Car Co. v. Eastern Ry. Co., 121 Fed. 609, 611, 57 C. C. A. 635, 637; Coghlan v. Stetson (C. C.) 19 Fed. 727, 729; Jacobs v. Spalding, 71 Wis. 177, 186, 36 N. W. 608; Russell v. Allerton, 108 N. Y. 288, 292, 15 N. E. 391.

The intention of the parties, when manifest, or when ascertained from the written agreement, must control and be enforced, without regard to inapt expressions or the dry words of the contract, unless that intention is directly contrary to the plain sense of the binding words of the agreement. American Bonding Co. v. Pueblo Investment Co., 150 Fed. 17, 28, 80 C. C. A. 97, 108; Prentice v. Duluth, etc., Forwarding Co., 58 Fed. 437, 443, 7 C. C. A. 293, 298; Westervelt v. Mohrenstecher, 76 Fed. 118, 121, 22 C. C. A. 93, 95, 34 L. R. A. 477; Tillitt v. Mann, 104 Fed. 421, 424, 43 C. C. A. 617, 619; Salt Lake City v. Smith, 104 Fed. 457, 462, 43 C. C. A. 637, 643, 644; Uinta Tunnel, etc., Co. v. Ajax Gold Mining Co., 141 Fed. 563, 567, 73 C. C. A. 35; U. S. Fidelity & G. Co. v. Board of Com'rs, 145 Fed. 144, 148, 76 C. C. A. 114; Witt v. Railway Company, 38 Minn. 122, 127, 35 N. W. 862; Driscoll v. Green, 59 N. H. 101; Johnson v. Simpson, 36 N. H. 91; Walsh v. Hill, 38 Cal. 481, 486, 487.

The acceptance by a creditor of the promissory note of his debtor for his antecedent debt does not extinguish it, unless the note is paid. It is not an absolute, but a conditional, payment of the debt. Downey

v. Hicks, 14 How. 240, 243, 14 L. Ed. 404; The Kimball, 3 Wall. 37, 45, 18 L. Ed. 50; The Emily Souder, 17 Wall. 666, 670, 21 L. Ed. 683; Peter v. Beverly, 10 Pet. 532, 568, 9 L. Ed. 522; Lyman v. The Bank of the United States, 12 How. 225, 243, 13 L. Ed. 965; In re Worcester County, 102 Fed. 808, 814, 42 C. C. A. 637, 643; Atlas S. S. Ltd. v. Colombian Land Company, 102 Fed. 358, 359, 42 C. C. A. 398, 399; Cheltenham Stone & Gravel Co. v. Gates Iron Works, 23 Ill. App. 635, 637; Id. 124 Ill. 623, 626, 16 N. E. 923; Hine v. Roberts, 48 Conn. 267, 271, 40 Am. Rep. 170; First National Bank of Pueblo v. Newton, 10 Colo. 161, 171, 14 Pac. 428.

A clear agreement by the creditor that he will take the risk of the payment of the note and that the debt is discharged thereby, or the indubitable intention of both the parties to that effect, is requisite to extinguish a debt by the taking of the debtor's note. An agreement that a debt shall be paid, or shall be payable, or that it has been paid by the note of the debtor, is a contract for an extension of the time of payment, and that the debt shall be paid, or that it has been paid, by the note of the debtor on condition that the note is paid, but not otherwise. Combination Steel & Iron Co. v. St. Paul City Railway, 47 Minn. 207, 209, 49 N. W. 744; 2 Benjamin on Sales (7th Ed.) § 729; Story on Promissory Notes, par. 404; Tobey v. Barber, 5 Johns. (N. Y.) 68, 72, 4 Am. Dec. 326; Eastman v. Porter, 14 Wis. 39, 42, 46, 47; Johnson v. Weed, 9 Johns. (N. Y.) 310, 6 Am. Dec. 279; Comptoir D'Escompte v. Dresbach, 78 Cal. 15, 20, 21, 20 Pac. 28; Putnam v. Lewis, 8 Johns. (N. Y.) 389; Owenson v. Morse, 7 Term Reports, 64, 66; Sayer v. Wagstaff, 5 Beavan's Reports, 415, 423, 49 English Rep. Full Reprint, 639, 642; Maillard v. Duke of Argyle, 6 Manning & Granger's Rep. (46 English Common Law) 40, 46; Port Darlington Harbour Co. v. Squair, 18 U. C. Q. B. 533. Where the extinguishment of a debt has the effect to strike down a lien or a title securing its payment, the presumption that it is not discharged by the acceptance of the note of the debtor in payment of it is strengthened, because in such a case the discharge of a lien is more unusual and unreasonable. The Kimball, 3 Wall. 37, 45, 18 L. Ed. 50; Sweet & Carpenter v. James, 2 R. I. 270, 294, 297; The Bird of Paradise, 5 Wall. 545, 18 L. Ed. 662.

The application of these rules of law to the facts of the case in hand leaves little doubt of the sense and meaning of the provision of the contract that the $4,200 should be paid by the note of the mining company upon which the minds of the parties to this contract must have met. The ordinary meaning of that term was that the debt should be paid by the note on condition that the note was paid, but should not be extinguished otherwise, and the common and customary meaning of an expression is to be preferred to an unusual and ingenious interpretation of it. The payment of that part of the purchase price of the property was secured by the retention of the title in the vendor, and this fact raises a strong presumption that the parties did not intend that the security should be released until the note was paid. The vendor was of St. Louis, the vendee of Colorado, the goods were to be shipped in two specified parcels at two different times from the former to the latter place, the vendee agreed to pay $16,800 for them in five

installments, the first four in cash before the vendee could get possession of the second shipment, and the last installment, the $1,200, by the vendee's note at 60 days. The payment of the first four install-ments was secured by the retention by the vendor of the bill of lading of the last shipment until those installments were paid in cash, so that the only purpose and the only effect of the retention of the title to the property by the vendor thereafter was to secure the payment of the last installment, and this purpose and effect would be defeated by a construction that the debt for this installment was to be extinguished, and the security for it released, by the giving of the debtor's note, which was unpaid, an obligation of no higher character than its obligation to pay the installment without the note.

The futility and unreasonableness of a stipulation thus interpreted, the strong presumption that the parties did not intend to agree that the security should be released until the debt of the obligor was absolutely paid, and the facts that the giving and acceptance of a note for a debt does not extinguish it, that the common and customary meaning of agreements that a debt has been paid, or that it shall be paid, by note, is that it has been paid, or that it will be paid, on condition that the note is paid, that it is only when there is a clear agreement by the creditor that the note of the debtor shall discharge the debt and that the creditor will take the risk of the payment of the note, or an indubitable intention of the parties to that effect, that a creditor's acceptance of such a note extinguishes the debt or releases its security, and the further fact that there was no such agreement in this case, compel the conclusion that the parties to this controversy never intended to agree, and never did agree, that the $4,200 should be absolutely paid, or that the security for its payment should be released, by the acceptance of the debtor's note. It remained unpaid, and will remain unpaid, until that note is paid.

The judgment must be reversed, therefore, and the case must be remanded to the Circuit Court for further proceedings in accordance with the views expressed in this opinion; and it is so ordered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes