TANDY MACKENZIE *v.* CHARLES E. KING, DE-
FENDANT, THE BANK OF HAWAII, LIMITED,
AN HAWAIIAN CORPORATION, AND HAWAII
MUSIC COMPANY, LIMITED, AN HAWAIIAN
CORPORATION, GARNISHEES.

No. 1775.

ARGUED OCTOBER 7, 1927.          DECIDED NOVEMBER 21, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an action at law in which the plaintiff claims
of the defendant the sum of $2800 as damages for the
breach of a contract of employment. The allegations of
the declaration are, in substance, that the defendant
agreed to employ the plaintiff and the plaintiff undertook
to serve the defendant as a member of an operatic troupe
for the period of sixteen weeks beginning December 19,
1926, at an agreed salary of $350 per week; that the de-
fendant, without cause, discharged the plaintiff before
the expiration of the time agreed upon and is still owing

him the salary for the period of eight weeks. The case was tried before a jury and a verdict rendered for the plaintiff in the full amount claimed. With the consent of both parties, the presiding judge instructed the jury that the evidence of the plaintiff and that of the defendant "is in agreement, that they entered into a contract of employment under the terms of which Mr. Mackenzie" (the plaintiff) "was to receive and Mr. King" (the defendant) "was to pay three hundred and fifty dollars a week for sixteen weeks." In other words, the evidence was undisputed that there was a contract of employment between the parties, that the defendant was to pay and the plaintiff was to receive as his salary $350 per week and that the agreed period of employment was sixteen weeks. The evidence was also undisputed, and no contention is now made to the contrary, that the period of the employment was to begin and did begin on December 19, 1926.

The presiding judge instructed the jury that the expression "sixteen (16) weeks" as used in the contract meant "sixteen consecutive weeks." It is contended on behalf of the defendant upon the present bill of exceptions that the question of whether the sixteen weeks agreed upon by the parties were sixteen consecutive weeks or sixteen non-consecutive weeks was one of fact to be determined by the jury and that it was not purely one of law to be passed upon by the court. The contract in this case is to be found in cablegrams and letters which passed between the parties. Replying to the plaintiff's questions, "how many weeks you guarantee me" and "how many weeks can you guarantee me, must know," the defendant said, "guarantee sixteen weeks" and in turn asked, "what guarantee from you?" To this the plaintiff replied, "guarantee stay with you sixteen weeks." The contract is wholly in these writings. It is not claimed

that any part of it is oral. The evidence is altogether undisputed as to what the writings were. The language in which the contract was expressed is undisputed. The contract was that the one would employ and the other would serve for "sixteen weeks." This language is entirely unambiguous. It admits of but one construction and that is that the contract was for a period of sixteen *consecutive weeks*. That is the construction consonant with good English and with the ordinary, everyday acceptation of the words used. When one takes a vacation for ten weeks, he takes it for ten consecutive weeks. If a ship is chartered for two years, it is chartered for two consecutive years. If a laborer or a clerk undertakes to serve another for sixty days or for six months or for six years, the undertaking is to serve for the specified length of time consecutively. No one would understand that the vacation was for a total of ten weeks with intervals of work interrupting it now and then, or that the undertaking was to serve for that total length of time, made up of smaller detached periods to be later chosen by the one party or by the other. Such a view would not be in accordance with common experience and common sense.

When a contract is expressed wholly in writing and the language of the writing is shown by undisputed evidence and there is no latent ambiguity, any question of construction arising upon the face of the instrument is for the court and not for the jury to decide. There being no ambiguity in the language of the contract, there is no occasion for a jury to consider any evidence of practical construction by the parties or other evidence outside of the contract itself. It is only when a contract is ambiguous that resort may be had, under some circumstances, to these aids to construction.

It is not claimed by either of the contending parties to this case that the employer in his cablegrams or letters

referred to one definite, certain, consecutive period of sixteen weeks and that the employee in his messages referred to another definite, certain, consecutive period of sixteen weeks. No support for any such theory is to be found in the writings. In his cablegram of November 13, 1926, King said to Mackenzie that the engagement would "open Majestic nineteenth," meaning the nineteenth of December. In the subsequent cablegrams which passed between the parties there was bargaining on other points but no further reference was made to the date of opening. Under these circumstances the defendant must be deemed to have acquiesced in the proposal that the engagement should open on December nineteen. Neither party now disputes that the time for which the plaintiff was to be paid under the contract began to run December 19, 1926. The only question of construction submitted to us under the exceptions is as to the duration of the period of the employment.

The question whether the plaintiff waived the non-performance by the defendant of the contract was left to the jury under proper instructions. The jury must have found that there was no such waiver. The doctrine of forfeiture invoked by the defendant in his briefs is not involved under the evidence adduced.

The exceptions are overruled.

*M. E. Winn* (*Thompson, Cathcart & Beebe* with him on the brief) for plaintiff.

*J. A. Matthewman* (also on the briefs) for defendant.

### CONCURRING OPINION OF PARSONS, J.

The contract relied upon by plaintiff is set forth in a series of cablegrams and letters, copies of which were filed as a bill of particulars and evidence of which was introduced at the trial. Omitting non-essentials, the communications introduced in evidence were as follows:

(1) September 16, 1926, King in Honolulu to Mackenzie in New York: "Believe three fifty good salary cannot increase offer am under heavy expense try one season plan open California end November answer prepaid."

(2) September 17, 1926, Mackenzie to King: "Accept offer transportation for two return."

(3) September 17, 1926, King to Mackenzie: "All right plan reach Los Angeles November twentysix writing."

(4) October 25, 1926, letter, King to Mackenzie: "I have arranged for your transportation. Plan to be in Los Angeles on the 25th of November. * * *"

(5) October 27, 1926, King to Mackenzie: "Play booked fine have already mailed your transportation to New York address."

(6) November 4, 1926, King to Mackenzie: "You need two weeks rehearsal making uniforms New York custom four weeks rehearsals no pay but willing allow your reasonable expenses full pay begins December twentieth."

(7) November 8, 1926, Mackenzie to King: "Working now cannot afford lose five weeks without salary either pay me or I arrive December eight how many weeks you guarantee me two berths needed from Chicago. * * *"

(8) November 13, 1926, King to Mackenzie: "Reach Los Angeles eighth sure open Majestic nineteenth tickets already New York you call Union Pacific office Chicago next week am ordering change tickets am sailing twentieth."

(9) November 13, 1926, Mackenzie to King: "How many weeks can you guarantee me must know wire immediately."

(10) November 14, 1926, King to Mackenzie: "Guarantee sixteen weeks may run five years what guarantee from you."

(11) November 14, 1926, Mackenzie to King: "Guarantee stay with you sixteen weeks."

The complaint alleges that under said written agreement the defendant engaged the plaintiff to take part in the operetta "The Prince of Hawaii" for a period of sixteen weeks beginning December 19, 1926, at a salary of $350 a week. Whatever provision the writings lack to fix definitely the time when Mackenzie's pay was to commence was supplied by undisputed extrinsic proof. As set forth in the majority opinion, the fact that such pay was to commence December 19, 1926, is not controverted by the defendant.

Defendant's bill contains eight exceptions, numbers 1, 2 and 3 of which are to the giving of plaintiff's requests for instructions numbered 2, 4 and 6 respectively, and numbers 4, 5, 6, 7 and 8 of which are to the refusal of defendant's requests numbered 1, 3, 6, 6a and 11 respectively. Exceptions 1, 2 and 4 may be treated together. Plaintiff's request numbered 2 as modified was thus given to the jury: "This is a suit to recover damages in the sum of two thousand eight hundred dollars ($2800) for the breach of a certain contract entered into by and between the plaintiff, Tandy Mackenzie, and the defendant, Charles E. King, by the terms of which contract the defendant employed the plaintiff in the operatic troupe of the 'Prince of Hawaii' for a period of sixteen (16) consecutive weeks beginning December 19, 1926, and ending April 9, 1927, at a salary of three hundred fifty dollars ($350) a week." Plaintiff's request number 4 was modified and given to the jury as follows: "And I further instruct you that 'sixteen (16) weeks' as used in this contract means sixteen consecutive weeks, commencing Dec. 19, 1926."

Exceptions 1, 2 and 4 raise two questions: first, was it within the court's province, and not within that of the

jury, to construe the provisions of the contract with reference to the term of its operation; and, second, if such construction came within the court's province, did the court err in instructing the jury that sixteen weeks as used in said contract means sixteen consecutive weeks and that the term of plaintiff's employment thereunder was sixteen consecutive weeks, beginning December 19, 1926, and ending April 9, 1927?

1. Defendant claims that the contract contains an ambiguity as to the term of its operation of a kind legally capable of explanation by the aid of extrinsic evidence as to its contemporaneous practical construction by the parties themselves; but a careful examination of the transcript discloses no offer or admission of evidence sufficient to sustain a finding of a practical construction other than that set forth in the court's instructions 2 and 4 above quoted. Had there been such evidence, the trial judge would have been confronted with another problem, as to the proper solution of which I express no opinion. The rule applicable to this phase of the case, as I view it, is thus expressed in 2 Elliott on Contracts, § 1564: "The construction of a written contract is for the courts and not the jury when the evidence establishing the agreement is not in conflict, and this is true notwithstanding the agreement is contained in several writings such as letters and telegrams exchanged between the parties. * * * If a doubt arises upon the construction of a phrase in a written instrument, it is to be decided by the court upon inspection and not by the jury. * * * Where the contract is ambiguous in any of its terms and the ambiguity can be solved by reference to other parts of the contract or surrounding circumstances which are uncontroverted by the evidence, it is the duty of the court to solve the ambiguity, and to declare the true meaning of the contract." See also 1 Thompson on Trials (2d Ed.) §§ 1072,

1073, pp. 901, 902, citing in footnote 35 the leading case of *Macbeath* v. *Haldimand*, 1 T.R. 172, 180, 181, 182.

2. Having itself undertaken to interpret the contract, the trial court, as above set forth, instructed the jury that the words "sixteen weeks" as therein used mean sixteen consecutive weeks. The record showing no qualification, said words, as held in the majority opinion, admit of no other construction. We are apprised of no other definite construction claimed for them. To hold that they mean sixteen non-consecutive and undesignated weeks or sixteen weeks to be selected at the discretion of the defendant would be to hold that the agreement afforded the plaintiff no legal right to insist upon employment on any certain date or within any period of limitation; and to hold that the writings showed that the plaintiff had in mind one period of sixteen weeks and the defendant another period of sixteen weeks as the term of employment would be to hold that there was no valid or enforceable contract between them. No claim has been advanced that because of want of mutuality there was no contract, or that the agreement was void for uncertainty. Unless a contrary intent appears, an interpretation which favors validity should be preferred to one which renders the agreement invalid. "A contract should, moreover, be construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used. This rule is based on the presumption that when parties make an instrument, the intention is that it shall be effectual, and not nugatory." 6 R.C.L. § 229, pp. 839, 840, and note 12. "Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. * * * If one construction would make it unreasonable, while another would do justice to both

parties, the latter will be adopted." 6 R.C.L. §230, p. 841. See also *A. Leschen & Sons Rope Co.* v. *Mayflower Gold Mining, etc. Co.,* 173 Fed. 855, 35 L.R.A. (N.S.) 1. Following the language of the federal case last above cited, this court, in *Honolulu Pineapple Co.* v. *Saito,* 24 Haw. 787, 799, held: "Where the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred."

Defendant says that the same question which is involved in exceptions 1, 2 and 4 is also involved in exception number 3. This is not apparent. If it is true, however, the exception is disposed of in the discussion of exceptions 1, 2 and 4. Instruction number 6 to which exception number 3 was taken is as follows: "It is undisputed that the defendant Mr. King has failed to pay the plaintiff Mr. Mackenzie for the eight (8) weeks comprising the period from February 12th to April 9th, 1927. If you find and believe from the evidence that the plaintiff, Mr. Mackenzie, did not waive or consent to the nonperformance of the terms of the contract by the defendant Mr. King, then you must find for the plaintiff in the sum of two thousand eight hundred dollars ($2800) unless you further find and believe that the plaintiff could have, by reasonable diligence, secured suitable employment, in which event you must find for the plaintiff in the amount of two thousand eight hundred dollars ($2800) less the sum if any plaintiff could have earned in suitable employment during the eight weeks' period." That this is a correct statement of an undisputed fact and of the law relative to the measure of damages in the

case at bar is not controverted except as hereinabove set forth. There is no error in the instruction.

Exception number 5 is to the court's refusal to give defendant's requested instruction number 3 as follows: "If you find that Mr. King failed to employ Mr. Mackenzie as he had promised, then, as Mr. Mackenzie's undertaking to stay with Mr. King was dependent and conditional upon King's keeping his promise, it became optional with Mr. Mackenzie whether he, Mr. Mackenzie, would take advantage of any such failure by Mr. King and treat the contract as broken by Mr. King or whether he, Mr. Mackenzie, would waive a breach of contract by Mr. King and treat the contract as still in effect, or whether he would agree with Mr. King, mutually to modify the contract." The ground of refusal was that the matter contained in request number 3 was covered by other instructions. The record discloses that this ground was well taken, the subject of waiver of breach and the circumstances under which it might be found, as in said request set forth, was fully covered by plaintiff's requests 7 and 8 and by defendant's requests 4, 5, 5a, 5b, 7, 8, 10, 12 and 15, and the subject of the jury's province with respect to a possible finding of modification was likewise covered by defendant's numbers 10, 12a and 15—all given by the court.

Exceptions 6, 7 and 8 were to the court's refusal to give defendant's requests numbered 6, 6a and 11, all on the subject of "forfeiture." The subject of forfeiture was not involved in the trial and the three requests last above named for that reason were properly refused by the court.

For the reasons above set forth I concur in the conclusion of the majority that the exceptions should be overruled.