MARTIN E. PLAUT and SHARON E. PLAUT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Plaut v. Commissioner
Docket No. 3032-84.
United States Tax Court
T.C. Memo 1987-100; 1987 Tax Ct. Memo LEXIS 96; 53 T.C.M. (CCH) 191; T.C.M. (RIA) 87100; February 19, 1987. Malcolm D. Brutman, for the petitioners. George W. Connelly, Jr., for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1971
$10,868.66
1972
11,239.94
1973
3,430.45
1974
394.88
The issue for decision is the scope of Forms 872, Consents to Extend the Time to Assess Tax, which petitioners and the Internal Revenue Service executed for the taxable years 1971 through 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. *97 The stipulation and the exhibits attached thereto are incorporated by this reference. Petitioner husband purchased a partnership interest in 1971 in the Geo-Resources Drilling Fund 1971 Program (Geo 1971) and, in 1972, purchased an interest in the Geo-Resources Drilling Fund 1972 Program (Geo 1972). He purchased said partnership interests with cash and nonrecourse promissory notes. The Philadelphia Internal Revenue District examined the partnership returns of Geo 1971, for the years 1971 through 1974, and Geo 1972, for the years 1972 through 1974. Petitioners executed Forms 872, consents to extend the statute of limitations on assessment, for the taxable years 1971, 1972, 1973 and 1974. These consents contained restrictive language and extended the statutes of limitations on assessment to December 31, 1983. Forms 872 for the Taxable Year 1971
On November 6, 1974, the Buffalo Returns Program Managers Staff (Buffalo Staff) sent to petitioners the following letter: The Philadelphia District is conducting an examination of the 1971 return of Geo. Resources Drilling Fund 1971 Program of which you are a partner. If adjustments are made to the partnership return, they may *98 result in reciprocal adjustment to your individual return. Unfortunately, sufficient time does not remain to permit us to make a thorough and satisfactory examination. You may extend the limitation period by signing all copies of the enclosed form and returning them within ten (10) days from the date of this letter. Upon acceptance of the properly signed forms, we will return one copy to you. * * * Petitioner husband added to the enclosed form, a Form 872, the following restrictive language: However, this extension is granted only with respect to the matter outlined in the letter of 6 Nov. 74-and for no other part of the '1971 return.' Petitioners executed and mailed the Form 872 to the Buffalo Staff, which received and accepted the form as modified. In 1975, Buffalo Staff sent to petitioners another Form 872. Petitioners received the form and executed it, after adding the following restrictive language: The amount of any deficiency assessment must be limited to that resulting from any adjustment to deduction attributable to non-recourse loans on the distributive share from GEO RESOURCES DRILLING FUND 1971 PROG. After receiving the form, which contained the new restrictive *99 language, the IRS informed petitioners that the restrictive language was not acceptable. In December 1975, Buffalo Staff prepared, and petitioners and the IRS executed, a Form 872 with restrictive language as follows: The amount of any deficiency assessment must be limited to that resulting from any adjustment to the distributive share from nonrecourse loan portion of: Geo Resources Drilling Fund 1971 Prog. In December 1976, petitioners and the IRS executed a Form 872 which contained restrictive language that was identical to the language in the December 1975 form. In December 1977, petitioners and John Heim, Chief of Buffalo Review Staff, executed another Form 872 after petitioners added the words "paid in by taxpayer to" to the restrictive language in said form. The language used in the form was as follows: The amount of any deficiency assessment must be limited to that resulting from any adjustment to the distributive share from nonrecourse loan portion paid in by taxpayer to: GEO Resources Drilling Fund 1971 Prog. Petitioners and the IRS subsequently executed other Forms 872, but the restrictive language, which they used, was not different than that used in the *100 December 1977 form. Forms 872 for the Taxable Year 1972
In February 1976, petitioners and the IRS executed the first Form 872 for the taxable year 1972. Said form contained the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to the distributive share from: Geo Resources Drilling Fund 1972 Year End * * *. * * * In June 1976, petitioners and the IRS executed a Form 872 with respect to their 1972 Federal income tax return with the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to the distributive share from Geo. Resources Drilling Fund 1972 Year End and includes any amount resulting from statutory computation or recomputation based on such adjustment limited to the non-recourse loan portion of the share. * * * On December 14, 1977, the IRS sent to petitioners another Form 872. Petitioners received the form, added the words "and paid in by the taxpayer" to the Form 872, and executed that form on December 28, 1977. Said form contained restrictive language as follows: The amount of any deficiency assessment *101 is to be limited to that resulting from any adjustment to the distributive share from Geo. Resources Drilling Fund 1972 Year End and includes any amount resulting from statutory computations and recomputations based on such adjustment, limited to the non-recourse loan portion of the share, and paid in by the taxpayer. * * * John Heim received the form and executed it on behalf of the IRS on December 29, 1977. Petitioners and the IRS subsequently executed other Forms 872, but the restrictive language, which they used, was not different than that used in the December 1977 form. Forms 872 for the Taxable Year 1973
In March 1977, petitioners and the IRS executed the first Form 872 for the taxable year 1973. Said form contained the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to the distributive share from Geo. Resources Drilling Fund 1971 Program and Geo. Resources Drilling Fund 1972 Year End and includes any amount resulting from statutory computations and recomputations based on such adjustment, limited to the non-recourse loan portion of the share. * * * On December 14, 1977, the *102 IRS sent petitioners another Form 872 for the taxable year 1973. Petitioners received the Form 872, added the words "and paid in by the taxpayer" to the Form 872, and executed said Form on December 28, 1977. Said form contained restrictive language as follows: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to the distributive share from Geo. Resources Drilling Fund 1971 Program and Geo. Resources Drilling Fund 1972 Year End and includes any amount resulting from statutory computations and recomputations based on such adjustment, limited to the non-recourse loan portion of the share and paid in by the taxpayer. John Heim received the form and executed it on behalf of the IRS on December 29, 1977. Petitioners and the IRS subsequently executed other Forms 872, but the restrictive language, which they used, was not different than that used in the December 1977 form. Forms 872 for the Taxable Year 1974
On March 29, 1978, petitioners and the IRS executed the first Form 872 for the taxable year 1974. Said form contained the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting *103 from any adjustment to the distributive share from GEO Resources Drilling Fund 1971 Program and GEO Resources Drilling Fund 1972 Year End and includes any amount resulting from statutory computations and recomputations based on such adjustment, limited to the non-recourse loan portion of the share paid in by the taxpayer. * * * Petitioners and the IRS subsequently executed other Forms 872, but the restrictive language, which they used, was not different than that used in the March 1978 form. The Internal Revenue Service and the general partners of Geo 1971 and Geo 1972 agreed to the following adjustments: Geo Resources Drilling Fund 1971 Program
Disallowance
1971
1973
1974
Intangible Drilling Costs -
premised upon nonrecourse
borrowing by partnership
$10,129,982
Abandonments
1,797,305
Management fees
800,000
Interest Deduction
19,470
$ 479,147 $399,539 Total Disallowance Per Year
$12,746,757
$ 479,147 $399,539 Adjustments to Disallowance
Interest Deduction
($ 143,935)
($344,178)
Principal Payments
( 132,946)
( 128,469)
Capital Gains
( 1,890,678)
( 324,688)
Total Adjustments
($2,167,559)
($797,335)
Net Adjustment to Loss Claimed
$12,746,757
($1,688,412)
($397,796)
*104 Geo Resources Drilling Fund 1972 Year End Program
Disallowance
1972
1973
1974
Intangible Drilling Costs -
premised upon nonrecourse
borrowing by partnership
$14,282,531
Advance Royalties
1,618,762
Abandonments
1,423,292
Management Fees
1,200,000
Interest Deduction
52,616
$1,121,033 $ 827,200 Total Disallowance Per Year
$18,577,201
$1,121,033 $ 827,200 Adjustments to Disallowance
Abandonments
($2,025,672)
Interest Deduction
( 85,344)
($ 469,650)
Principal Payments
( 15,925)
( 356,483)
Capital Gains
( 796,166)
Total Adjustments
($2,126,941)
($1,622,299)
Net Adjustments to Loss
Claimed Per Year
$18,577,201
($1,005,908)
($ 795,099)
On December 15, 1983, respondent mailed to petitioners a notice of deficiency with respect to petitioners' taxable years 1971 through 1974. OPINION Section 6501(a) provides that respondent may assess deficiencies in income taxes within three years after a timely return is filed. Section 6501(c)(4) permits a taxpayer and respondent, before said three-year period expires, to consent in writing to extend the period for assessment. The purpose of a consent is to *105 allow the Internal Revenue Service an extended period in which to assess a tax. A consent to extend the period for assessment is essentially a unilateral waiver of the taxpayer's defense and is not a contract. Stange v. United States,282 U.S. 270 (1931). Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension. Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983). Doubtful language in a contract should be interpreted against the party who has selected the language. Roszkos v. Commissioner, 87 T.C.     (Dec. 4, 1986) and the cases cited therein. In Constitution Publishing Co. v. Commissioner,22 B.T.A. 426, 428-429 (1931), the Board stated: If the language used were clear and without ambiguity * * * we can not resort to any rules of construction to give the waiver a different meaning, regardless of the intention of the parties. We are without power of a court of equity and we can not substitute another consent for that expressed by the parties. We can not reform the instrument, although both parties intended something else. On the *106 other hand, if the expression used and the language of the instrument is merely ambiguous, the rules of construction with respect to doubtful or ambiguous contracts or documents are applicable here. Upon this ground we have the right and it is our duty to determine what * * * the parties intended by the expression used. An instrument is clearly ambiguous and is open to construction when its words, taken literally, lead to absurdity or have no meaning or when two meanings could be given. * * * It is a primary rule of construction of documents that the Court must if possible ascertain and give effect to the mutual intention of the parties and in doing this greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. See Chesapeake etc. Canal v. Hill,15 Wall. 94; Pressed Steel Car Co. v. Eastern R.R. Co.,121 Fed. 609; 57 C.C.A. 635. The intention of the parties is to be collected and determined from the entire instrument and not merely from detached portions. * * * Another rule of construction well recognized is that if no meaning can be given to a word *107 or expression from the connection in which it is used, or if it is inconsistent with other expressed provisions of the instrument, on examination of the whole instrument such word or term may be treated as mere surplusage. Way v. Greer,81 N.E. 1002. * * * In the present case, petitioners and respondent dispute the meaning of the phrase "non-recourse loan portion of the share and paid in by the taxpayer." We, therefore, must decide 1) whether the Forms 872 referred to petitioners' or the partnerships' nonrecourse loans and 2) whether the words "and paid in by the taxpayer" further restrict the forms. Which Nonrecourse Loan?
Petitioner husband used nonrecourse loans to purchase part of his partnership interests. Geo 1971 and Geo 1972 used nonrecourse loans to finance their operations. The Forms 872 use the phrase "non-recourse loan portion," but do not specify whose nonrecourse loans. Respondent contends that the phrase refers to petitioners' nonrecourse loans. Petitioners, at various times, contend that the phrase refers to the partnerships' nonrecourse loans. Petitioner husband, however, testified that the phrase refers to the nonrecourse loans *108 which he used to purchase his partnership interests, not the nonrecourse loans which the partnerships used to finance their operations. [1] Accordingly, we hold that the phrase refers to petitioners' nonrecourse loans. "And Paid In By the Taxpayer"
Petitioners apparently argue that their bases in their partnership interests would be increased by the amount that their nonrecourse loans were paid off. They further argue that petitioner husband added the phrase "and paid in by the taxpayer" because they wanted to make sure respondent gave them credit for such increases to their bases, if and when they occurred. Thus, petitioners apparently contend that their share of the adjusted losses *109 at the partnership level may be limited further by the amount of their basis attributable to their nonrecourse loans, but only to the extent that said loans have not been paid off. Respondent contends that the words, which petitioner husband added, do not limit the amount, which respondent could assess, to the unpaid portion of the nonrecourse loans. Petitioners contend that they intended to limit respondent's adjustment to the amount of the nonrecourse note which had not been paid off. The restrictive language, however, limits the amount of the adjustment to the nonrecourse loan portion of the share paid off by the taxpayer. The restrictive language, in its literal meaning, is the antithesis of that which petitioner contends it means. We must interpret the language in the consents. The language, which was used, makes little sense, and the parties' briefs have helped little. We have deliberated extensively and can ascribe no reasonable meaning to petitioners' added language. Accordingly, we hold that the language which petitioners added does not further restrict the Forms 872. Decision will be entered under Rule 155.
Footnotes
1. Petitioner testified on direct examination as follows: Q. Am I correct in understanding that it's in effect a two part restriction? That is first of all the services, [sic] in any event, limited to making adjustments with respect to the nonrecourse note portion of your investment? A. Yes. * * * Q. It's your understanding, Dr. Plaut, that during these later years 77, 78, 79 income generated by the partnership is going to satisfy your nonrecourse debt, correct? A. Yes, sir.↩